**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALVADOR MONDACA-VEGA,
*Petitioner*,

v.

LORETTA E. LYNCH, Attorney
General,
*Respondent*.

No. 03-71369

Agency No.
A019-263-384

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued En Banc March 17, 2014
Submitted February 3, 2015
San Francisco, California

Filed December 15, 2015

Before: Sidney R. Thomas, Chief Judge and Harry
Pregerson, Alex Kozinski, Barry G. Silverman, William A.
Fletcher, Johnnie B. Rawlinson, Jay S. Bybee, N. Randy
Smith, Mary H. Murguia, Jacqueline H. Nguyen and
Andrew D. Hurwitz, Circuit Judges.

Order;
Opinion by Judge Hurwitz
Partial Concurrence and Partial Dissent by Judge N.R.
Smith;
Partial Concurrence and Partial Dissent by Judge Murguia

## SUMMARY[*]

### Immigration

The en banc court denied petitioner's petition for review from the Board of Immigration Appeals' decision finding him deportable, based on the en banc court's affirmance of the district court's determination following a bench trial pursuant to this court's transfer under 8 U.S.C. § 1252(b)(5)(B) finding that petitioner is not a United States citizen.

Judge Hurwitz wrote an opinion joined by the full panel as to Parts I–III; by Judges Kozinski, Silverman, Rawlinson, Bybee, Murguia and Nguyen as to Part IV; and by Judges Kozinski, Silverman, Rawlinson and Bybee as to Parts V and VI.

In Parts I–III, Judge Hurwitz wrote that petitioner presented substantial credible evidence that he was a U.S. citizen and that the government satisfied its burden to rebut his claim by clear and convincing evidence.

In Part IV, Judge Hurwitz wrote that the district court determined only a factual question regarding whether petitioner was a U.S. or Mexican citizen, and that independent review was not appropriate.

In Part V, Judge Hurwitz concluded that this court is required under Fed. R. Civ. P. 52(a) to review the district court's factual findings, including its ultimate conclusion that

---

[*] [*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

petitioner is not a citizen because he was born in Mexico, for clear error. Judge Hurwitz wrote that *Lim v. Mitchell*, 431 F.2d 197 (9th Cir. 1970), an alienage-determination case applying independent review to findings of fact, has been overruled.

In Part VI, Judge Hurwitz denied the petition for review.

Judge N.R. Smith wrote an opinion concurring in part and dissenting in part. Chief Judge Thomas and Judges Pregerson and W. Fletcher joined as to Part I, in which Judge N.R. Smith would hold that the government must prove by clear, unequivocal, and convincing evidence that a petitioner claiming to be a U.S. citizen is deportable. Judge N.R. Smith also concurred in Sections I–III and in the result of Section V and VI of the majority decision; writing that although he did not agree with the majority's holding on the burden of proof, he concurred in the judgment to deny the petition.

Judge Murguia wrote an opinion concurring in part and dissenting in part, which Judge Nguyen joined in full and which Chief Judge Thomas and Judges Pregerson and W. Fletcher joined as to Parts A, B and D. In Parts A, B and D, Judge Murguia would find that whether petitioner procured U.S. citizenship illegally or by fraud is a question of law to be reviewed de novo, and would reverse the district court and grant the petition for review. In Part C, Judge Murguia would hold that *Lim*, which applied an independent standard of review in an alienage determination case, is sound and should be followed. In Part E, upon independently reviewing the district court's determination that the government met its burden and reviewing for clear error the district court's underlying findings of fact, Judge Murguia would reverse the district court and grant the petition for review.

**COUNSEL**

Matt Adams (argued), Northwest Immigrant Rights Project, Seattle, Washington; and Martha H. Rickey, Northwest Immigrant Rights Project, Granger, Washington, for Petitioner.

August E. Flentje (argued), Stuart F. Delery, Colin A. Kisor, Elizabeth J. Stevens, Aaron S. Goldsmith, Katherine E.M. Goettel, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

Holly S. Cooper, Davis, California, as and for Amicus Curiae U.C. Davis Immigration Law Clinic.

Devin T. Theriot-Orr, Gibbs Houston Pauw, Seattle, Washington, for Amicus Curiae American Immigration Lawyers Association.

Charles Roth, Chicago, Illinois, as and for Amicus Curiae National Immigrant Justice Center.

**ORDER**

The petition for review is denied.

Judge Hurwitz wrote an opinion joined by the full panel as to Parts I–III; by Judges Kozinski, Silverman, Rawlinson, Bybee, Murguia and Nguyen as to Part IV; and by Judges Kozinski, Silverman, Rawlinson and Bybee as to Parts V and VI.

Judge N.R. Smith wrote an opinion concurring in part and dissenting in part, which Chief Judge Thomas, and Judges Pregerson and W. Fletcher join as to Part I. Judge N.R. Smith concurs in the result of (but does not join) Parts V and VI of Judge Hurwitz's opinion.

Judge Murguia wrote an opinion concurring in part and dissenting in part, which Judge Nguyen joins in full and which Chief Judge Thomas, and Judges Pregerson and W. Fletcher join as to Parts A, B and D.

Judges Kozinski, Silverman, Rawlinson, Bybee, N.R. Smith, and Hurwitz would deny the petition for review. Chief Judge Thomas and Judges Pregerson, W. Fletcher, Murguia, and Nguyen would grant the petition for review.

## OPINION

HURWITZ, Circuit Judge, joined by the full panel as to parts I–III of his opinion; joined in full as to his entire opinion by KOZINSKI, SILVERMAN, RAWLINSON, and BYBEE, Circuit Judges; joined in the results of Parts V and VI by N.R. SMITH, Circuit Judge; and joined in Part IV by MURGUIA and NGUYEN, Circuit Judges:

Our task is to review a district court determination—made after a bench trial—that the petitioner[1] was born in Mexico, not the United States.  After finding the petitioner had introduced sufficient evidence that he is a U.S. citizen, the district court shifted the burden to the government to rebut by "clear, unequivocal, and convincing" evidence, and found that it had done so.

The petitioner claims that the district court erred in concluding that "clear, unequivocal, and convincing" evidence—a phrase we have used to describe the government's burden in alienage-determination proceedings —is identical to the traditional civil intermediate burden of proof.  He argues the proper burden is instead more akin to the "beyond a reasonable doubt" standard that applies in criminal cases.  We disagree, and hold that "clear, unequivocal, and convincing" is the familiar intermediate standard used in civil cases when particularly important individual interests are at stake.

---

[1] Because the core question in these proceedings is one of identity, we refer to the petitioner by that title rather than as Reynaldo Mondaca Carlon, his asserted name, or Salvador Mondaca-Vega, the name the district court found to be his true name.

Because we find no error in the district court's application of the burden of proof, we also reach the second substantial question presented in this case—the standard of review applicable to the trial court's findings of fact. The petitioner argues we must review the district court's findings de novo. We hold, instead, that the "clear error" standard of Federal Rule of Civil Procedure 52(a) applies. Under that standard, the petition for review must be denied.

## I.

### A.

Although the parties sharply contest whether the petitioner is a U.S. citizen, much of the evidence in this case is a matter of public record and undisputed.

**1.** Two authentic birth certificates are in the record—one of Salvador Mondaca-Vega, born on June 3, 1931 in Sinaloa, Mexico, the other of Renoldo[2] Mondaca Carlon, born on July 17, 1931 in Imperial, California. Although the petitioner concedes he has on multiple occasions identified himself as Salvador Mondaca-Vega, he claims he is really Reynaldo Mondaca Carlon, a U.S. citizen.

**2.** It is uncontested that regardless of his place of birth, the petitioner grew up in El Fuerte, Sinaloa, Mexico. He came to the United States around 1951, when he was about twenty years old, to look for work. A long series of contacts with law enforcement and immigration authorities ensued.

---

[2] The petitioner claims his true first name is Reynaldo, not Renoldo, and that the birth certificate misspells his name.

His rap sheet indicates that in July 1951, the petitioner, identifying himself as Salvador Mondaca, was taken into custody by the Sheriff's Office in Auburn, California and transferred to federal immigration officials. In September 1951, the petitioner accepted voluntary departure under the name Salvador Mondaca-Vega.

**3.** The record also reflects various actions taken in 1952 and 1953 by individuals identifying themselves by the names on the birth certificates; the parties dispute whether these actions were taken by the petitioner. In September 1952, someone identifying himself as Salvador Mondaca unsuccessfully applied for a social security card, naming his place of birth as Mexico and stating that his date of birth was April 13, 1931. Also in September 1952, someone identifying himself as Reynaldo Mondaca Carlon registered for selective service in Salinas, California; he was later found unacceptable for induction.

In May 1953, a person claiming to be Reynaldo C. Mondaca and identifying his date of birth as July 17, 1931 and his place of birth as Imperial, California, successfully applied for a social security card. Handwriting analysis suggests the signature on this application belongs to the petitioner. Although the district court made no finding as to who made the first social security card application and the selective service registration, the court concluded that the May 1953 application was made by the petitioner.

**4.** According to the rap sheet, in May 1953 and September 1954, the petitioner, claiming first to be Salvador Mondaca-Vega, then Salvador Mondaca, was transferred to immigration authorities in Washington State and deported to Mexico. A 1994 fingerprint analysis by the Seattle Police

Department indicates that fingerprints taken on both occasions were from the same individual, and that they belong to the petitioner.

**5.** In September 1954, the petitioner, in a sworn interview with an INS official, stated that his name is Salvador Mondaca-Vega, that he was born on April 16, 1931 in Sinaloa, Mexico, and that he is a Mexican citizen. Expert handwriting analysis submitted by both parties suggests the signature on the statement was made by the petitioner.

**6.** The rap sheet indicates that on at least two occasions after his 1954 deportation, the petitioner received voluntary departure—once in 1956 as Salvador Mondaca-Vega, and once in 1966 under the name Jose Valdez-Vega. The name Salvador Mondaca-Vega also appears in an October 1969 entry for a bench warrant issued in California for failure to appear.[3]

**7.** In August 1970, the petitioner married Aurelia Estrella. They had nine children, six born in Mexico and three in the United States. In 1977, the petitioner successfully petitioned for adjustment of status for his wife and two of his Mexico-born children based on his asserted status as a U.S. citizen; the remaining four Mexico-born children received certificates of citizenship based on their father's purported status. The Department of State issued the petitioner a U.S. passport in April 1998, and a replacement passport in September 2005 after the original was lost.

---

[3] Between 1969 and 1994, the petitioner was charged with numerous offenses under the name Reynaldo Mondaca Carlon and variations thereof. On at least one occasion, he was charged as a U.S. citizen.

## B.

The convoluted procedural history of this case begins in 1994, when the petitioner, after a conviction in Washington state court for second-degree assault, was charged with entry without inspection and making a false claim of U.S. citizenship and placed in removal proceedings.

**1.** After an evidentiary hearing, an immigration judge found by "clear, convincing and unequivocal" evidence that the petitioner is a non-citizen who entered without inspection and by misrepresentation. The BIA affirmed.

**2.** On review, we found the petitioner's claim of U.S. citizenship presented genuine issues of material fact and, pursuant to the statute now codified at 8 U.S.C. § 1252(b)(5)(B),[4] transferred the proceedings to the Eastern District of Washington for a de novo determination of the petitioner's alienage. *Mondaca-Vega v. Ashcroft*, 104 F. App'x 627, 628 (9th Cir. 2004). The district court denied the parties' cross-motions for summary judgment, *Mondaca-Vega v. Holder*, No. 2:04-cv-00339-FVS, 2011 WL 1195877, at *3 (E.D. Wash. Mar. 29, 2011), and conducted a bench trial.

**3.** At trial, the petitioner admitted that he had used the name Salvador Mondaca-Vega (and other names he could not remember). He claimed, however, that he never knew the real Salvador Mondaca-Vega and could not recall how he came up with the name. He explained that he repeatedly used

---

[4] At the time, this provision was codified at 8 U.S.C. § 1105a(a)(5) (repealed 1996).

the name of a non-citizen with authorities because friends told him a U.S. citizen would be detained longer.

The district court found the petitioner had carried his initial burden of proof by offering a U.S. passport and showing that his wife and children had adjusted status and obtained citizenship through him. *Mondaca-Vega v. Holder*, No. 2:04-cv-00339-FVS, 2011 WL 2746217, at *9 (E.D. Wash. July 14, 2011). The court then shifted the burden to the government to rebut the petitioner's claim of citizenship by "clear and convincing" evidence, and, after hearing the government's case, found this burden satisfied. *Id.* at *9–10. This conclusion was based in part on the district judge's finding that the petitioner's testimony was not credible. *Id.* at *7–8, *10.

**4.** On April 25, 2013, a divided three-judge panel of this Court found no clear error in the district court's conclusion. *Mondaca-Vega v. Holder*, 718 F.3d 1075, 1086 (9th Cir. 2013). A majority of the non-recused active judges then voted to rehear the case en banc.[5]

## II.

The government "bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence." *Chau v. INS*, 247 F.3d 1026, 1029 n.5 (9th Cir. 2001). When, however, the government offers evidence of foreign birth, a "rebuttable presumption of alienage" arises, "shifting the burden to the

---

[5] After hearing argument on March 17, 2014, the en banc panel vacated submission and referred the case to mediation. The case was resubmitted on February 3, 2015, after mediation efforts failed.

[alleged citizen] to prove citizenship." *Id.* Upon production by a petitioner of "substantial credible evidence" of the citizenship claim, this presumption bursts and the burden shifts back to the government to "prov[e] the respondent removable by clear and convincing evidence." *Ayala-Villanueva v. Holder*, 572 F.3d 736, 737 n.3 (9th Cir. 2009); *see also Lee Hon Lung v. Dulles*, 261 F.2d 719, 724 (9th Cir. 1958) ("[W]here one has, over a long period of years, acted in reliance upon a decision . . . admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing.").

## III.

To the extent the government contends that the petitioner failed to offer even "substantial credible evidence" of U.S. citizenship, we reject this claim. The petitioner possessed a valid U.S. passport and successfully petitioned for the adjustment of status of his wife and children based on his purported status as a U.S. citizen. This is "substantial credible evidence" of U.S. citizenship. *Ayala-Villanueva*, 572 F.3d at 737 n.3.

## IV.

At issue, then, is whether the government bore its burden of proving the petitioner's alienage. *Id.*; *see also Lee Hon Lung*, 261 F.2d at 724 (noting that when the burden shifts back to the government, the question is whether sufficient evidence "warrant[s] disregard[ing]" the petitioner's proof of citizenship). The threshold issue is whether the district court erred in holding the government to a "clear and convincing" burden of proof. We review the district court's determination

of the appropriate quantum of proof de novo. *United States v. Gill*, 280 F.3d 923, 930 (9th Cir. 2002).

## A.

The petitioner correctly notes that our alienage-determination[6] cases often describe the government's burden as proof by "clear, unequivocal, and convincing" evidence. *See, e.g.*, *Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir. 1970) (citing *Chaunt v. United States*, 364 U.S. 350, 353 (1960), and *Knauer v. United States*, 328 U.S. 654, 657 (1946)); *Lee Hon Lung*, 261 F.2d at 723 (citing *Schneiderman v. United States*, 320 U.S. 118, 123, 125 (1943), and *Baumgartner v. United States*, 322 U.S. 665, 670 (1944)). The petitioner argues that the word "unequivocal" must add *some* meaning to the words "clear and convincing," and that "clear, *unequivocal*, and convincing" thus signifies a higher burden than simply "clear and convincing."

We disagree. Our task today is not to apply canons of statutory construction; the burden of proof in alienage-determination proceedings is entirely a judicial construct.[7] *Cf. Woodby v. INS*, 385 U.S. 276, 284 (1966) ("[D]egree of proof . . . is the kind of question which has traditionally been

---

[6] We use the term "alienage determination" to refer to adjudications made pursuant to 8 U.S.C. § 1252(b)(5)(B) and 8 U.S.C. § 1503(a).

[7] Although Congress has provided for varying burdens of proof within the Immigration and Nationality Act, it has not specifically addressed the burden in § 1252(b)(5)(B) proceedings. Notably, in 8 U.S.C. § 1229a(c)(3)(A), Congress required the government to establish deportability by "clear and convincing" evidence. The relevant regulation, on the other hand, requires that deportability be proved by "clear, unequivocal, and convincing" evidence. 8 C.F.R. § 1240.46(a).

left to the judiciary to resolve . . . ."). The Supreme Court has repeatedly used the phrases "clear, unequivocal, and convincing" and "clear and convincing" interchangeably. *Compare Baumgartner*, 322 U.S. at 671 (describing the burden on the government in denaturalization cases as proof by "clear, unequivocal, and convincing" evidence), *with Pullman-Standard v. Swint*, 456 U.S. 273, 286 n.16 (1982) (describing the issue in *Baumgartner* as "whether or not the findings of the two lower courts satisfied the clear and convincing standard of proof necessary to sustain a denaturalization decree"). We have repeatedly done the same. *See, e.g.*, *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012); *Lopez-Chavez v. INS*, 259 F.3d 1176, 1180–81 (9th Cir. 2001); *United States v. Meza-Soria*, 935 F.2d 166, 169 (9th Cir. 1991). We therefore cannot mechanistically conclude that the phrase signifies a burden of proof higher than the familiar intermediate standard simply because it contains the additional word "unequivocal."

### B.

We are troubled, moreover, by the possible alternative interpretations of the phrase "clear, unequivocal, and convincing." This phrase cannot, as Judge N.R. Smith's separate opinion contends, plausibly be interpreted to mean "beyond a reasonable doubt." The Supreme Court surely knows how to use the phrase "beyond a reasonable doubt" when it wants to. In the citizenship context, however, it has never done so. Rather, it has consistently described "clear, unequivocal, and convincing evidence" as the familiar civil intermediate standard. *See Woodby*, 385 U.S. at 285 ("In denaturalization cases the Court has required the Government to establish its allegations by clear, unequivocal, and convincing evidence. . . . That standard of proof is no

stranger to the civil law." (footnote omitted)); *Schneiderman*, 320 U.S. at 125 ("[A] certificate of citizenship is . . . closely analogous to a public grant of land. To set aside such a grant the evidence must be clear, unequivocal, and convincing—it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." (citations and internal quotation marks omitted)); *cf. California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 (1981) (per curiam) ("[T]he Court has never required the 'beyond a reasonable doubt' standard to be applied in a civil case. This unique standard of proof . . . is regarded as a critical part of the moral force of the criminal law." (internal quotation marks omitted)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 737 (1966) ("Although the [Norris-LaGuardia Act] does not define 'clear proof,' . . . Congress meant at least to signify a meaning like that commonly accorded such similar phrases as 'clear, unequivocal, and convincing proof.' Under this standard, the plaintiff in a civil case is not required to satisfy the criminal standard of reasonable doubt . . . ." (citing *Schneiderman*, 320 U.S. at 125)). These cases make plain that the phrase "clear, unequivocal, and convincing" is simply one of the many articulations of the intermediate burden of proof, not a counterintuitive way to say "beyond a reasonable doubt."**[8]**    *Cf. Meza-Soria*, 935 F.2d at 169

---

**[8]** Judge Smith relies on a statement in *Addington v. Texas* that "[t]he term 'unequivocal,' *taken by itself*, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." 441 U.S. 418, 432 (1979) (emphasis added) (footnote omitted); *see also Ward v. Holder*, 733 F.3d 601, 605 (6th Cir. 2013) (relying on *Addington* for the proposition that "[t]he 'clear, unequivocal, and convincing standard' is a more demanding degree of proof than the 'clear and convincing' standard"). But *Addington* also clarifies that the word "unequivocal," when used together with words such as "clear" and "convincing," simply refers to the intermediate standard. 441 U.S. at 424;

(concluding that a determination of alienage by "clear, unequivocal, and convincing evidence" in deportation proceedings could not have collateral estoppel effect in criminal reentry prosecutions because that burden "is not the same as proof beyond a reasonable doubt").

Equally implausible is the notion that "clear, unequivocal, and convincing" signifies a fourth burden of proof—something between clear and convincing evidence and proof beyond a reasonable doubt. The Supreme Court has repeatedly emphasized that there are three burdens of proof, and expressly noted that the word "unequivocal" is among the many adjectives used to describe the intermediate burden. *See Cooper*, 454 U.S. at 93 ("Three standards of proof are generally recognized, ranging from the 'preponderance of the evidence' standard employed in most civil cases, to the 'clear and convincing' standard reserved to protect particularly important interests in a limited number of civil cases, to the requirement that guilt be proved 'beyond a reasonable doubt' in a criminal prosecution." (footnote omitted)); *Addington v. Texas*, 441 U.S. 418, 424 (1979) ("The intermediate standard . . . usually employs some combination of the words 'clear,' 'cogent,' 'unequivocal,' and 'convincing' . . . ."). Three is enough. It defies reason to think that a fourth burden of proof

---

see also *Cooper*, 454 U.S. at 93 (distinguishing the burden applied in the deportation and denaturalization contexts from proof beyond a reasonable doubt). Other isolated statements by individual Justices in non-majority opinions suggesting "clear, unequivocal, and convincing" may "approximate[]" or be "substantially identical" to proof beyond a reasonable doubt, *see Klapprott v. United States*, 335 U.S. 601, 612 (1949) (opinion of Black, J.); *id.* at 617 (Rutledge, J., concurring); *Kungys v. United States*, 485 U.S. 759, 795 (1988) (Stevens, J., concurring in the judgment), have "never commanded a majority of the Court," *Meza-Soria*, 935 F.2d at 169.

could be meaningfully distinguished and distinctly applied. *See Addington*, 441 U.S. at 424 ("[E]fforts to analyze . . . the differences among [burdens of proof] . . . may well be largely an academic exercise . . . ."); 2 McCormick on Evidence § 340 (listing adjectives used to describe the intermediate burden and stating that "[n]o high degree of precision can be attained by" them). We have never saddled district courts with the hair-splitting exercise of discerning a burden located in between clear and convincing evidence and proof beyond a reasonable doubt, and we decline the invitation to do so now.

To be sure, standards of proof serve a symbolic function. *See Addington*, 441 U.S. at 425 ("In cases involving individual rights, whether criminal or civil, the standard of proof at a minimum reflects the value society places on individual liberty." (alterations and internal quotation marks omitted)). But the intermediate burden of proof requires "an abiding conviction that the truth of [the] factual contentions" at issue is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). For this reason, it is appropriately employed when, as here, "particularly important interests" are at stake. *Cooper*, 454 U.S. at 93; *see Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982) (termination of parental rights); *Addington*, 441 U.S. at 432–33 (civil commitment); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010) (forcible medication of non-dangerous detainees). The symbolic value of the intermediate standard matches the gravity of the task in these proceedings. It is not necessary to create, out of whole cloth, a nebulous fourth burden to recognize that an alienage determination implicates important rights. We therefore conclude that the district court did not err in its articulation of the government's burden of proof.

## V.

Because we find no error in the district court's use of the intermediate burden of proof, we must next determine the standard of review applicable to the district court's finding that this burden was satisfied.  The petitioner argues that, notwithstanding the factual nature of the district court's findings, our review is independent—i.e., that this Court reviews the trial judge's factual determinations without deference and independently determines what the evidence below establishes.  Again, we disagree.

### A.

Federal Rule of Civil Procedure 52(a)(6) provides in plain terms that district court "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous."  The petitioner argues that because the Supreme Court has created an exception to "clear error" review for "ultimate" findings of fact in denaturalization proceedings, the same standard should govern our review here.

### B.

*Baumgartner* was the first case to expressly articulate the principle of independent review in denaturalization cases. The question was whether evidence purporting to show Baumgartner's loyalty to the Third Reich supported a finding that he had obtained his naturalization decree by fraud. 322 U.S. at 666.  The Court held that the evidence did not support a finding of fraud, and, in so doing, set aside the findings of the district court.  *Id.* at 670–71, 677–78.  The opinion acknowledged the usual rule of deference to trial court factfinding, but found that the rule did not apply to "the

conclusion that may appropriately be drawn from the whole mass of evidence," which, although technically a finding of fact, implicated "broadly social judgments—judgments lying close to opinion regarding the whole nature of our Government and the duties and immunities of citizenship." *Id.* at 671.

Subsequent denaturalization cases underscored that independent review was motivated by concern about the risk of political persecution uniquely present in the denaturalization context. Thus, in *Knauer*—which involved the validity of an oath of allegiance—the Court explained that without independent review of lower court findings, "valuable rights would rest upon a slender reed, and the security of the status of our naturalized citizens might depend in considerable degree upon the political temper of majority thought and the stresses of the times." 328 U.S. at 658–59 (quoting *Schneiderman*, 320 U.S. at 159).

First Amendment concerns are also prevalent in the denaturalization cases. In *Nowak v. United States*, for example, the government sought to prove that the petitioner "was not 'attached' to the principles of the Constitution by showing that he has been a member of the Communist Party with knowledge that the Party advocated the overthrow of the Government by force and violence." 356 U.S. 660, 665 (1958). The Court applied independent review and set aside a denaturalization decree, emphasizing that party membership and "expression of opinions or predictions about future events" was not enough, under its seditious-speech jurisprudence, to show advocacy of violent overthrow. *Id.* at 663–68 (citing *Yates v. United States*, 354 U.S. 298 (1957), *overruled by Burks v. United States*, 437 U.S. 1 (1978), and *Dennis v. United States*, 341 U.S. 494 (1951)).

Because the denaturalization cases often pose First Amendment concerns, they have naturally been linked with the Supreme Court's First Amendment jurisprudence. *See, e.g.*, *Schneiderman*, 320 U.S. at 119 ("We brought this [denaturalization] case here on certiorari because of its importance and its possible relation to freedom of thought." (citation omitted)).   In the First Amendment context, independent review is also sometimes applied. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 505–08 (1984) (noting that the Court has independently reviewed factual records in First Amendment cases involving fighting words, incitement to imminent lawless action, obscenity, and defamation).   Independent review in this context protects not only a litigant's First Amendment rights, but also facilitates the appellate courts' "role in marking out the limits of the [constitutional] standard through the process of case-by-case adjudication." *Id.* at 503.   Thus, appellate courts "conduct[] an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited." *Id.* at 505; *see also Knauer*, 328 U.S. at 659–60 (emphasizing the blurred line between facts and law in determinations of loyalty and fraud); *Baumgartner*, 322 U.S. at 671 (noting the "so-called ultimate 'facts'" under review "clearly implie[d] the application of standards of law").

The Supreme Court, however, has never extended independent review to alienage determinations.  And, as this case demonstrates, the Court's reasoning for applying independent review in denaturalization cases does not apply here.

The question for the district court was straightforward: Who is the petitioner? Is he Reynaldo Mondaca Carlon, a native and citizen of the United States, or Salvador Mondaca-Vega, a native and citizen of Mexico? Nothing about this determination implicates "broadly social judgments" or opinions "regarding the whole nature of our Government and the duties and immunities of citizenship." *Baumgartner*, 322 U.S. at 671; *see also Chaunt*, 364 U.S. at 353. Nor does it implicate free-speech or political-persecution concerns. *See Knauer*, 328 U.S. at 658–60; *Schneiderman*, 320 U.S. at 119. And, most importantly, there were no questions of law—nor mixed questions of law and fact, nor questions that could conceivably bear on the future definition of a legal right—before the district court. *See Baumgartner*, 322 U.S. at 671. Under § 1252(b)(5)(B), we refer proceedings to the district court for the sole purpose of resolving a "genuine issue of material fact." 8 U.S.C. § 1252(b)(5)(B); *see, e.g.*, *Anderson v. Holder*, 673 F.3d 1089, 1093, 1097 (9th Cir. 2012) (alienage-determination proceedings involving question of whether petitioner's "paternity was established by legitimation before he turned twenty-one"); *Ayala-Villanueva*, 572 F.3d at 739–40 (alienage-determination proceedings involving identity of petitioner's father); *Chau*, 247 F.3d at 1030 (alienage-determination proceedings involving identity of petitioner's father and satisfaction of residency requirements). The petitioner is either Reynaldo or Salvador, and the entirely fact-bound answer to this question has no implications for future cases. *See Bose*, 466 U.S. at 503–06. Independent review therefore has no role to play in these proceedings.

## C.

The petitioner urges that we follow *Lim*, an alienage-determination case applying independent review to findings of fact. 431 F.2d at 199–200. *Lim* derived this independent review principle by unelaborated analogy to the Supreme Court's denaturalization jurisprudence. *Id.* at 199. If *Lim* is good law, it indeed controls the outcome here. But, for the reasons explained above, we conclude that the analogy to the denaturalization cases does not withstand critical scrutiny.

Moreover, in the years since *Lim*, the Supreme Court has questioned whether there can ever be independent appellate review of a question of fact. In *Pullman-Standard*, the Court reversed the Fifth Circuit for independently reviewing a finding of intentional discrimination in a Title VII case. 456 U.S. at 285–90. In doing so, the Court emphasized that the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a) "does not make exceptions or purport to exclude certain categories of factual findings," and, "in particular, it does not divide findings of fact into those that deal with 'ultimate' and those that deal with 'subsidiary' facts." *Id.* at 287; *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (reemphasizing that Rule 52(a) has no exceptions). And, just last term, the Supreme Court reversed the Federal Circuit for failing to apply clear-error review to factual findings underlying the construction of a patent claim. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836–39 (2015). The Court held that although the scope of a patent claim is a question of law, underlying evidentiary determinations are nevertheless questions of fact and therefore subject to clear-error review under Rule 52(a), which applies to all factual findings without exception. *Id.*

Under these cases, the relevant distinction for standard-of-review purposes is no longer between primary and ultimate facts, but facts and law. *See Pullman-Standard*, 456 U.S. at 286 n.16 ("Whatever *Baumgartner* may have meant . . . [, its] discussion of 'ultimate facts' referred not to pure findings of fact . . . but to findings that clearly imply the application of standards of law." (alteration and internal quotation marks omitted)). To be sure, the law-fact distinction is often "vexing." *Id.* at 288. But not today. There are no mixed questions of law and fact nor standards that require development "through the process of case-by-case adjudication" that could blur the dividing line in this case. *Bose*, 466 U.S. at 503. Here, as in *Lim*, only historical facts need be determined. *See Lim*, 431 F.2d at 199–204. *Lim*'s independent-review principle therefore has no continued vitality.[9]

## D.

In urging independent review, the petitioner also emphasizes the severity of the deprivation at stake. We do not minimize the point. The value of citizenship is well acknowledged in the case law. *See, e.g.*, *Fedorenko v. United States*, 449 U.S. 490, 505–06 (1981); *Baumgartner*, 322 U.S. at 671, 673. And, the petitioner arguably stands to lose just

---

[9] The panel majority in this case concluded that *Pullman-Standard* and *Anderson* had also repudiated the independent review principle in the *Baumgartner* line of cases. 718 F.3d at 1080. Although there is some force in that reasoning, today we need only conclude that *Lim* has been overruled, leaving the Supreme Court to decide whether it has also implicitly repudiated its own decisions. *See United States v. Easterday*, 564 F.3d 1004, 1010 (9th Cir. 2009) (as amended); *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

as much from a determination that he is not a citizen as a naturalized citizen does from a denaturalization decree.[10]

But the value of citizenship and the hardship of deportation are not the only, or even the primary, factors that motivated independent review in the denaturalization cases. Nor could they be. We review findings of lower courts with deference in a broad array of settings that implicate precious rights and severe deprivations. We even apply the deferential *Jackson*[11] standard in reviewing the sufficiency of the evidence supporting convictions in death penalty cases. *See Davis v. Woodford*, 384 F.3d 628, 639–41 (9th Cir. 2004) (as amended). Indeed, in deportation proceedings, where "[t]he immediate hardship . . . is often greater than that inflicted by denaturalization," *Woodby*, 385 U.S. at 286, we nevertheless review agency factfinding with deference, *see* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."). No greater scrutiny should apply to the factual findings of an Article III judge in alienage determinations.

### E.

For these reasons, we conclude that we are required under Rule 52(a) to review the district court's factual findings—including its ultimate conclusion that the petitioner

---

[10] At oral argument, the government admirably and unequivocally represented that it has "no interest in challenging the [status of the petitioner's] children." Accordingly, the only legal interests at stake in this case are the petitioner's.

[11] *Jackson v. Virginia*, 443 U.S. 307 (1979).

is not a citizen because he was born in Mexico—for clear error.  Under this standard, we must defer to the district court's findings unless we are "left with the definite and firm conviction that a mistake has been committed."  *Anderson*, 470 U.S. at 573 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  We may not "duplicate the role of the lower court."  *Id.*  Thus, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently."  *Id.* at 573–74.  As long as "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id.* at 574.

## F.

The following facts are beyond dispute: the petitioner has accepted voluntary departure on multiple occasions, he has been deported under the name Salvador Mondaca-Vega, he signed a sworn statement under the name Salvador Mondaca-Vega, and fingerprints taken for Salvador Mondaca-Vega by the INS match his fingerprints.  These facts give rise to a reasonable—if not inevitable—inference that the petitioner is Salvador Mondaca-Vega, born in Mexico.[12]  *See United*

---

[12] Although the petitioner admits he used the name Salvador Mondaca-Vega, he argues there is insufficient evidence linking him to *the* Salvador Mondaca-Vega born in Sinaloa, Mexico on June 3, 1931.  He emphasizes that he gave the wrong birth date for this individual when he signed a sworn statement attesting that he is Salvador Mondaca-Vega.  At his deposition, however, when asked why he used the name Salvador Mondaca-Vega, the petitioner testified that "[i]t just came to my mind to use that name" and that he had "never heard that name before."  Perhaps it was merely a coincidence that the petitioner, when selecting an alias,

*States v. Bucher*, 375 F.3d 929, 931 (9th Cir. 2004) ("[R]easonable inferences from th[e] facts are the province of the trier of fact."); *see also Anderson*, 470 U.S. at 573–74 (explaining that we must defer to the factfinder's reasonable conclusions that are based on "physical or documentary evidence or inferences from other facts").

To be sure, there is evidence to the contrary. The petitioner's wife and one of his daughters attested that he is Reynaldo Mondaca Carlon, a U.S. citizen. And the petitioner testified that although he has used various aliases, Reynaldo Mondaca Carlon is his true name and identity, that he began to use the name Salvador Mondaca-Vega with authorities because he believed he would be released from detention faster as a Mexican citizen,[13] and that he continued to use the name because the authorities already knew him as Salvador.

Acting as the finder of fact, however, the district court was entitled to discount this evidence. Much of it turned on credibility. *See Allen v. Iranon*, 283 F.3d 1070, 1078 n.8 (9th Cir. 2002) (citing *Anderson*, 470 U.S. at 573) (noting the "special deference" due to credibility determinations). For example, in her first declaration, the petitioner's wife referred to Sinaloa, Mexico as "the rancho of [the petitioner's] birth." She later retracted this statement, but the district court was surely entitled to draw an adverse inference from the

---

chose the exact name and year of birth of an individual with an authentic Mexican birth certificate. But the district court was entitled to conclude otherwise. *See Mondaca-Vega*, 2011 WL 2746217, at *8 (addressing the inconsistent dates of birth "in light of the record as a whole").

[13] He admitted at trial, however, that he continued to use the name Salvador Mondaca-Vega to be released from detention even after he allegedly had documentary proof of citizenship.

inconsistency, *see Gibbs v. Pierce Cnty. Law Enforcement Support Agency*, 785 F.2d 1396, 1402 (9th Cir. 1986) ("In cases of conflicting testimony where credibility is necessarily at issue, we must be especially reluctant to set aside the findings of the trial court." (internal quotation marks omitted)).

The district court also found the petitioner's testimony inconsistent and implausible. The petitioner claims he received the California birth certificate from his mother in Mexico after being deported in May 1953. The court reasonably noted, however, that it made little sense for the petitioner thereafter to continue to use the name of a non-citizen with immigration authorities, particularly given that he claimed to "always" carry the birth certificate with him. The petitioner's testimony was also inconsistent with his deposition and some of the documentary evidence. *See Mondaca-Vega*, 2011 WL 2746217, at *5–6 (noting discrepancies); *cf. Masayesva v. Zah*, 65 F.3d 1445, 1457 (9th Cir. 1995) ("The court found some of the testimony implausible or contradictory. There was no clear error.").

There are some minor errors in the district court's factfinding. For example, the government admits that the petitioner was not removed in July or September of 1951 or November of 1952, as the district court had concluded. But this error is inconsequential in light of undisputed evidence showing that the petitioner has indeed been removed under the name Salvador Mondaca-Vega on other occasions. The district court also incorrectly believed that the petitioner would have had to show a birth certificate in order to obtain a social security number. There was no evidence to this effect in the record, and no stated basis for judicial notice of this fact. But it is hardly conceivable that absent this mistake,

the district court would have reached a different conclusion, given the ample other reasons to doubt the petitioner's credibility.[14]

Finally, the petitioner emphasizes the various occasions on which the government appears to have accepted that he is a citizen—directly, by issuing him passports and adjusting the status of his family members, and indirectly, by charging him with a crime as a citizen or conducting investigations into his citizenship status that terminated favorably or inconclusively. These facts should weigh in the petitioner's favor before the finder of fact. Ultimately, however, the petitioner's position is simply that the evidence could plausibly be read as supporting his claim that he was born in this country. But the district judge found to the contrary, and the clear error standard "does not vest[] us with power to reweigh the evidence presented at trial in an attempt to assess which items should and which should not have been accorded credibility." *Cataphote Corp. v. De Soto Chem. Coatings, Inc.*, 356 F.2d 24, 26 (9th Cir. 1966).

Based "on the entire evidence," we are not "left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (quoting *U.S. Gypsum*, 333 U.S. at 395). That ends the analysis; we are not entitled to reject the district court's findings of fact because, on a cold record, we would have come out differently or

---

[14] Other errors asserted by the petitioner are not errors—and, in any event, are of no consequence to the ultimate determination. For example, the petitioner argues the district court improperly concluded that he was deported as Salvador Mondaca-Vega in July of 1953. The petitioner had been referred to the INS at this time, and a reasonable inference is that he was also deported, given that he had been deported before.

because we weigh the equities in the petitioner's favor.  We are therefore constrained to deny the petition for review.

**VI.**

The petition for review is **DENIED.**

N.R. SMITH, Circuit Judge, dissenting in part, with whom THOMAS, Chief Judge, and PREGERSON and FLETCHER, Circuit Judges, join in Part I, but concurring in Sections I–III and in the result of Section V and VI of the majority decision:

United States citizenship is "a right no less precious than life or liberty."  *United States v. Dang*, 488 F.3d 1135, 1138 (9th Cir. 2007) (quoting *Klapprott v. United States*, 335 U.S. 601, 616 (1949) (Rutledge, J., concurring)).  The Supreme Court has noted, "It is better that many . . . immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country." *Fat v. White*, 253 U.S. 454, 464 (1920).  Yet today, the majority diminishes a citizen's ability to protect his citizenship, by allowing the government to prove that Petitioner is not a United States citizen by the traditional, less demanding, standard of proof used in general civil litigation.  Thus, this 84-year-old Petitioner (whom the government has previously recognized as a United States citizen) will be stripped of his claimed citizenship and deported, without forcing the government to meet its "heavy burden of proof" to submit "clear, unequivocal, and convincing" evidence ("not leav[ing] the issue in doubt") that he is not a citizen. *Dang*, 488 F.3d at 1139 (quoting *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)).

This case does present a conflicting history of Petitioner's life.  However, amid all of the confusion, no one disputes that Petitioner (as Reynaldo Mondaca-Carlon ("Reynaldo")) has presented himself to the government as a United States citizen, and the United States has treated Petitioner as a United States citizen.  Thus, no one disputes that the government bore the burden to submit evidence that clearly, unequivocally, and convincingly (not leaving the issue in doubt) showed Petitioner was not Reynaldo.

Because I agree with Petitioner that the district court erroneously reached its decision, when it only required the government to present clear and convincing evidence regarding his citizenship, this case demands remand to the district court to redetermine the issue using the correct burden of proof.  Because remand is necessary, I would not address Petitioner's remaining issues.[1]

Even though I do not agree with the majority's holding on the burden of proof, I reluctantly concur in the judgment to deny the petition (Section VI).  Applying the clearly erroneous standard of review to the district court's findings of fact under Federal Rule of Civil Procedure 52(a) and using

---

[1] In this appeal, Petitioner makes four challenges.  First, Petitioner argues that the district court erred in its application of the standard of proof, applying a lower burden of proof than that required by "clear, unequivocal, and convincing."  Second, Petitioner argues that the district court erred in finding that the government presented clear, unequivocal, and convincing evidence that Petitioner's identity and United States citizenship was procured by fraud or error.  Third, Petitioner argues that the district court's factual findings were based on assumptions, speculation, and conjecture.  Fourth, Petitioner asserts that we must review de novo the district court's findings of fact, which assertion the government opposes.

the majority's "clear and convincing" burden of proof, I cannot grant the petition for review. There would also be no benefit to remanding this case to the district court, because the outcome would not change.

## I. The burden of proof required for clear, unequivocal, and convincing evidence is greater than the burden of proof required for clear and convincing evidence.

### A. *Federal courts have recognized a higher burden of proof for clear, unequivocal, and convincing evidence.*

The Supreme Court has recognized three general standards of proof—preponderance of the evidence (the minimum standard), clear-and-convincing evidence (the intermediate standard), and beyond a reasonable doubt (the high standard). *See Addington v. Texas*, 441 U.S. 418, 423–24 (1979). However, the Supreme Court has never suggested that standards of proof are limited to these three general levels. To the contrary, the Supreme Court and other courts have expressly recognized variants to the intermediate standard of proof. *See California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 (1981) (per curiam) ("This Court has, on several occasions, held that the 'clear and convincing' standard or one of its variants is the appropriate standard of proof in a particular civil case."). "In cases involving individual rights, whether criminal or civil, 'the standard of proof at a minimum reflects the value society places on individual liberty.'" *Addington*, 441 U.S. at 425 (alterations and citation omitted).

In both deportation and denaturalization proceedings, federal case law and regulations governing deportability

require that the government establish by "clear, unequivocal, and convincing evidence" that the petitioner is removable. *See Chaunt v. United States*, 364 U.S. 350, 353 (1960); *Woodby v. INS*, 385 U.S. 276, 285–86 (1966); 8 C.F.R. § 1240.46(a).   We have also applied this same clear, unequivocal, and convincing standard in cases where citizenship is at issue. *See Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir. 1970); *Lee Hon Lung v. Dulles*, 261 F.2d 719, 724 (9th Cir. 1958).   This case requires us to determine whether the addition of the word "unequivocal" changes the government's burden of proof to a standard above "clear and convincing evidence."

In *Addington*, the Supreme Court settled this very issue. In *Addington*, the Supreme Court was faced with the question of the appropriate standard of proof to apply in civil commitment proceedings.[2]   441 U.S. at 422.   In determining the appropriate standard of proof, the Supreme Court recognized that the addition of the word "unequivocal" created a burden "approximating, if not exceeding, that used in criminal cases," which higher burden was required for cases with "*unusually drastic*" consequences.   *Id.* at 432 (emphasis added).[3]   The Supreme Court further recognized that a higher burden of proof in denaturalization cases was appropriate, because those issues "were basically factual and therefore susceptible of objective proof," as opposed to civil

---

[2] The Supreme Court noted that states varied the standard between "clear and convincing," "clear, *cogent*, and convincing," and "clear, *unequivocal* and convincing."   *Addington*, 441 U.S. at 431–32.

[3] The Supreme Court further noted that "the term 'unequivocal' is not constitutionally required, although the states are free to use that [higher] standard."   *Addington*, 441 U.S. at 432.

commitment proceedings that are dependent on subjective proof. *Id.*

Similarly, in *Kungys v. United States*, the Supreme Court considered whether Kungys misrepresented or concealed facts to obtain citizenship. 485 U.S. 759, 765–66 (1988) (plurality opinion by Scalia, J.). The Supreme Court remanded the matter to the Third Circuit, but cautioned the court to "bear[] in mind" that "clear, unequivocal, and convincing" standard required an "*unusually high* burden of proof." *Id.* at 776 (emphasis added). Justice Stevens, in his concurrence,[4] emphasized the "special burden on the Government," which "in this kind of civil proceeding is equivalent to that enforced in criminal cases." *Id.* at 791–92 (Stevens, J., concurring).

This higher burden of proof has also been recognized in other cases. *See Klapprott*, 335 U.S. at 612 (Black, J., announcing judgment of the Court and delivering the opinion) (plurality opinion)[5] (noting that the clear, unequivocal, and

---

[4] Justice Stevens concurred in the opinion, because he believed that the majority's "new burden-shifting presumption . . . lowers the standard of proof required for the Government to prevail in a denaturalization proceeding." *Kungys*, 485 U.S. at 792 (Stevens, J., concurring).

[5] Justice Douglas joined the opinion. Justice Rutledge and Murphy concurred in the result, concluding that a higher burden of proof exists. Justice Burton joined the "judgment of the Court as limited to the special facts of this case and without expressing an opinion upon any issues not now before this Court." *Klapprott*, 335 U.S. at 616. Justice Burton noted that he agreed that a judgment of denaturalization could be entered by default, but determined that in this case the petitioner should be granted a hearing on the merits. Justice Burton did not suggest that a higher burden of proof should not be applied in a merits hearing. However, because the judgment was modified in a subsequent order on a more

convincing "burden is substantially identical with that required in criminal cases—proof beyond a reasonable doubt"); *id.* at 617 (Rutledge, J., concurring) (noting that the "burden of proof for denaturalization . . . approximates the burden demanded for conviction in criminal cases, namely, proof beyond a reasonable doubt"); *Schneiderman v. United States*, 320 U.S. 118, 122, 135 (1943) (holding citizenship "should not be taken away without the clearest sort of justification and proof," and that proof cannot "leave the issue in doubt"); s*ee also United States v. Horwitz*, 140 F. Supp. 839, 840 (E.D. Va. 1956) ("Moreover, with so dire consequences in the balance, the proof must be made by 'clear, unequivocal and convincing evidence which does not leave the issue in doubt,' in effect, 'proof beyond a reasonable doubt.'").

Our sister circuits have also recognized this higher burden of proof when revocation of citizenship is at issue. For example, in *United States v. Sprogis*, the Second Circuit noted:

> The government bears a *heavy burden of proof* in attempting to revoke an individual's citizenship. Because citizenship is such a precious right, the government to succeed must prove its case by *clear, unequivocal, and convincing evidence which does not leave the issue in doubt*. In addition, "the facts and the law should be construed as far as is reasonably possible in favor of the citizen."

narrow ground, I do not suggest that the majority agreed on a common reasoning regarding the burden of proof. *See Marks v. United States*, 430 U.S. 188, 193–94 (1977).

763 F.2d 115, 121 (2d Cir. 1985) (emphasis added) (citing *Fedorenko*, 449 U.S. at 505, and quoting *Schneiderman*, 320 U.S. at 122).

The Sixth Circuit, relying on *Addington*, concluded that the word "unequivocal" raised the level of proof necessary above the intermediate standard of proof. *See Ward v. Holder*, 733 F.3d 601, 605–06 (6th Cir. 2013). In *Ward*, the government sought to remove the petitioner, arguing that he had "abandoned his lawful-permanent-resident status." *Id.* at 602. The Sixth Circuit concluded that the appropriate degree of proof required was "clear, unequivocal, and convincing evidence." *Id*. The court then examined the level of proof that this standard required. *Id.* at 605. The Sixth Circuit, applying *Addington*, concluded that the word "'unequivocal' ma[de] a difference," and therefore "[t]he 'clear, unequivocal, and convincing standard' is a more demanding degree of proof than the 'clear and convincing' standard." *Id.*

The BIA has also recognized that the addition of the word "unequivocal" to the "clear and convincing" standard alters the burden of proof. *See Matter of Patel*, 19 I. & N. Dec. 774, 783 (BIA 1988). In addressing the standards of proof, the BIA recognized that "[t]he clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard applied in deportation and denaturalization proceedings because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt." *Id*.

Because consequences were "unusually drastic—loss of citizenship and expulsion from the United States," the Supreme Court has explained that the higher burden was appropriate in citizenship cases. *Addington*, 441 U.S. at 432.

This unusually high burden of proof reflects the value that society places on one's citizenship. *See Trop v. Dulles*, 356 U.S. 86, 93 (1958) (plurality opinion) (noting that United States citizenship itself is a fundamental right).

This higher burden of proof is consistent with the Supreme Court's discussions with regard to the value of United States citizenship. Removal of Petitioner implicates a loss of a serious liberty interest; a determination of this loss requires a heavy burden. *See Kungys*, 485 U.S. at 792 (noting "[t]his Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty. . . . To deport one who so claims to be a citizen, obviously deprives him of liberty. It may result also in loss of both property and life; or of all that makes life worth living." (internal alterations and quotation marks omitted) (quoting *Klapprott*, 335 U.S. at 611-12)); *Fedorenko*, 449 U.S. at 505–06 ("Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding."). Additionally, the Supreme Court has recognized that the loss of citizenship can have "severe and unsettling consequences." *Fedorenko*, 449 U.S. at 505. The potential loss of citizenship, regardless of whether obtained through birth or naturalization, is significant. *See Knauer v. United States*, 328 U.S. 654, 658 (1946) (holding that citizenship obtained through birth or naturalization "carries with it all of the rights and prerogatives of citizenship obtained by birth in this country 'save that of eligibility to the Presidency'"). Although "a deportation proceeding is not a criminal prosecution," the Supreme Court "has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no

contemporary identification." *Woodby*, 385 U.S. at 285. "The immediate hardship of deportation is often greater than that inflicted by denaturalization," because "many resident aliens have lived in this country longer and established stronger family, social, and economic ties here than some who have become naturalized citizens." *Id*. at 286. Thus, the Supreme Court has required "the solidity of proof . . . for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for [more than sixty] years." *Id.* at 285.

### B. *Past imprecise language does not "overrule" clear precedent.*

In this decision, the majority ignores this precedent, instead reading the word *unequivocal* out of the phrase, concluding that "clear and convincing" is the same standard as "clear, unequivocal, and convincing." Thus, it determines that the word "unequivocal" is meaningless, because the phrases have been used "interchangeably" in the past.

Imprecise usage or improper citation is not a proper basis for concluding that words have no meaning, especially in light of the Supreme Court's clear and unambiguous directive regarding the burden of proof. It is especially improper, because the majority does not cite (and I cannot find) any Supreme Court citizenship cases that suggest these standards are the same. Congress has not addressed the required standard of proof, and the Supreme Court has never overruled the precedent. Thus, the majority cites precedent where the Supreme Court and other courts have, in other contexts, used the standard interchangeably without regard to whether there is a different standard being applied. However, those

mistakes in other contexts should not alter our application of this Supreme Court precedent.

The majority not only ignores the term "unequivocal," it also ignores the dependent clause used by the Supreme Court in citizenship cases, which helps explain the term unequivocal. The Supreme Court has explained time and time again in the context of citizenship issues that "'clear, unequivocal, and convincing' evidence . . . *does not leave the issue in doubt*." *See Schneiderman*, 320 U.S. at 135 (emphasis added); *see also Baumgartner v. United States*, 322 U.S. 665, 670 (1944); *Knauer*, 328 U.S. at 657; *Klapprott*, 335 U.S. at 612 (plurality opinion); *Perez v. Brownell*, 356 U.S. 44, 47 n.2 (1958), *overruled on separate grounds by Afroyim v. Rusk*, 387 U.S. 253 (1967); *Nowak v. United States*, 356 U.S.660, 663 (1958); *Chaunt*, 364 U.S. at 353; *Costello v. United States*, 365 U.S. 265, 269 (1961); *Fedorenko*, 449 U.S. at 505; *Kungys*, 485 U.S. at 781. The clear and convincing standard (highly probable) is not equivalent to this language.

The majority's conclusion could only suggest that, because the Supreme Court inartfully chose its words in several non-citizenship cases, citizenship cases deserve nothing better. However, Supreme Court precedent suggests it is much more likely that the Supreme Court selected its words carefully for a select type of cases, and this court is bound to follow its precedent until such time as the Supreme Court overrules itself. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case

which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").

**C.** ***Comparing burdens of proof in immigration contexts further supports a conclusion that clear, unequivocal, and convincing evidence has a greater burden of proof than clear and convincing evidence.***

To again justify its decision, the majority notes that its "task today is not to apply canons of statutory construction; the burden of proof in alienage-determination proceedings is entirely a judicial construct." Maj. Op. 13.  I agree that we are examining judicial precedent.  However, when we determine the burden of proof, we must be mindful that "the standard of proof at a minimum reflects the value society places on individual liberty." *Addington*, 441 U.S. at 425 (alterations omitted) (quoting *Tippett v. Maryland*, 436 F.2d 1153, 1166 (4th Cir. 1971)).

Let us examine how these phrases are used by Congress. Congress has mandated that, in removal proceedings under 8 U.S.C. § 1229a, an alien "be ordered removed in absentia if the Service establishes by *clear, unequivocal, and convincing evidence* that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2) of this section)."  § 1229a(b)(5)(A) (emphasis added); *see also* 8 C.F.R. § 1003.26.  In contrast, Congress has also mandated (1) if an alien is an applicant for admission, the alien must establish that he or she is "*clearly and beyond doubt* entitled to be admitted and is not inadmissible under section 1182," § 1229a(c)(2)(A) (emphasis added), or (2) if an alien is asserting that he or she is "lawfully present in the United States pursuant to a prior admission," then the alien

must establish this fact "by *clear and convincing evidence*," § 1229a(c)(2)(B) (emphasis added).

Applying rules of statutory interpretation to § 1229a, "[i]t is our duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quoting *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883)). "[T]he use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003). Thus, we cannot suggest that Congress intended each subsection of § 1229a to require the same intermediate burden of proof. If so, we would ignore "the familiar canon of statutory construction," which requires that "[a]bsent a clearly expressed legislative intention to the contrary, [the language of the statute itself] must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Further, because Congress used different standards of proof language in § 1229a, "[w]e would not presume to ascribe this difference to a simple mistake in draftsmanship." *Russello v. United States*, 464 U.S. 16, 23 (1983). Therefore, Congress must have intended different standards of proof in the three contexts of immigration proceedings.

In interpreting § 1229a(b)(5)(A), Congress thus meant for aliens only to be removed in absentia after the government had met a higher burden of proof than the general "clear and convincing" intermediate standard. In establishing this burden, Congress "is presumed to be knowledgeable about existing law pertinent to any new legislation it enacts." *Native Vill. of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 554 (9th Cir. 1991). Thus, the majority's ruling today

suggests that Congress enacted § 1229a(b)(5)(A), providing a higher societal value to an alien who did not get proper notice of a hearing (and with no claim to citizenship) than to this Petitioner's claim that he was being robbed of his citizenship. The ruling cannot reflect the value society places on United States citizenship, as we must.

## D.  *Conclusion*

In deportation hearings, where a petitioner (who claims to be a United States citizen) will be deported and removed from the United States, the government must prove by clear, unequivocal, and convincing evidence that he or she is deportable.  Again, quoting the Sixth Circuit and the BIA, this standard of proof requires a "more demanding degree of proof than the 'clear and convincing' standard."  *Ward*, 733 F.3d at 605; *Matter of Patel*, 19 I. & N. Dec. at 783 ("The clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard applied in deportation and denaturalization proceedings because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt.").  Removal of Petitioner implicates the loss of a serious liberty interest; a determination of this loss requires a heavy burden, for which we must require the higher burden of proof.  *See Kungys*, 485 U.S. at 791 (Stevens, J., concurring) (noting "[t]his Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty. . . .  To deport one who so claims to be a citizen, obviously deprives him of liberty.  It may result also in loss of both property and life; or of all that makes life worth living." (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922))).

## II. Federal Rule of Civil Procedure 52(a) mandates the appropriate standard of review.

I agree with the majority that the proper appellate standard of review for district court nationality determinations is clear error. However, I reach that conclusion differently than my colleagues, because I believe Congress has spoken to the scope of judicial review in these cases.

Congress requires that this court review a district court's final order in nationality claims as we would a district court's decision in a declaratory judgment action. Federal Rule of Civil Procedure 52(a)(6) sets forth that review, requiring findings of fact "not be set aside unless clearly erroneous."

In 1961, Congress enacted . . . 8 U.S.C. § 1105a (1976 ed.), in order 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation of aliens from the United States.'" *Agosto v. INS*, 436 U.S. 748, 752 (1978) (alteration omitted) (quoting H.R. Rep. No. 1086, at 22 (1961), as printed in 1961 U.S.C.C.A.N. 2950, 2966.3). In enacting § 1105a, "Congress carved out one class of cases, however, where *de novo* review in district court would be available: cases in which the person subject to deportation claims to be a United States citizen." *Id.* at 753. The Supreme Court noted that, "[i]n carving out this class of cases, Congress was aware of our past decisions [such as *Ng Fung Ho*, 259 U.S. 276], holding that the Constitution requires that there be some provision for *de novo* judicial

determination of claims to American citizenship in deportation proceedings."[6]  *Id.*

In addition to carving out this class of cases, Congress also mandated the proper scope and standard of judicial review. *See* 8 U.S.C. § 1252(b). Congress provided for two types of review when nationality claims were at issue. 8 U.S.C. § 1252(b)(5). First, if a petitioner raised a nationality claim and presented no genuine issue of material fact, we may decide the issue of nationality subject to the administrative record and the administrative finding of fact. § 1252(b)(4),[7] (5)(A).[8]  Second, if the petitioner raises issues of material fact, then we must remand the matter to the district court to conduct a hearing and decide the issue as if it

---

[6] Prior to this enactment, the Supreme Court has provided a standard of review in denaturalization cases, which required courts to undertake an independent review of the record. *See, e.g.*, *Baumgartner*, 322 U.S. at 670; *Fedorenko*, 449 U.S. at 506. However, none of the Supreme Court cases (setting forth this standard of review) were brought under former § 1105a(a)(5) or the present § 1252(b)(5)(B).

[7] Section 1252(b)(4) provides: "Except as provided in paragraph (5)(B)–(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based, (B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."

[8] Section 1252(b)(5)(A) allows for the court to determine the nationality claim, "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."  8 U.S.C. § 1252(b)(5)(A).

were a declaratory judgment. § 1252(b)(5)(B).**⁹** Once the remand to the district court occurs, there is no basis for an appellate court to treat the case any differently than it would an appeal from a declaratory judgment.

Congress was clear then and is clear now—the district court is to conduct the de novo hearing and make a decision, just as if the action was brought as a declaratory judgment action under § 2201.**¹⁰** In declaratory judgment actions (such as this) tried by the district court without a jury, the district court shall "find the facts specially" and review of those factual findings "must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(1), (6); *see also Sessions, Inc. v. Morton*, 491 F.2d 854, 858 (9th Cir. 1974).

In enacting § 1252(b)(5), Congress took into consideration the Supreme Court's mandate that a de novo review of citizenship claims must be undertaken prior to removal. In doing so, it specifically concluded that the

---

**⁹** Section 1252(b)(5)(B) requires us to transfer the nationality claim "[i]f the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for *a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28* [Declaratory Judgment Action.]." (emphasis added).

**¹⁰** Section 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. *Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."* (emphasis added).

district court was "better positioned than another to decide the issue in question." *Cf. Miller v. Fenton*, 474 U.S. 104, 114 (1985). It specifically declined to have this court review issues of fact de novo. If Congress wanted this court to independently review the district court's ultimate findings of fact, it could have easily provided for that review. It did not.

It is not relevant that the Supreme Court has not yet specifically addressed this court's standard of appellate review under former § 1105a(a)(5) or § 1252(b)(5)(B), nor is it relevant that the Supreme Court has not overruled *Baumgartner* and its progeny. Congress has provided the scope and standard of review as to this class of cases. This court is bound to follow Congress's mandate.

With the exception of *Lim*, 431 F.2d 197, no other case in the Ninth Circuit has addressed this specific issue. In light of the statutory enactment of § 1105a, *Lim* was wrongly decided. It relied on *Knauer* and *Baumgartner* without considering whether the new statutory framework precluded continued reliance on that standard of review.

Lastly, even if there were any question with regard to the appropriate standard of review, the Supreme Court cleared any remaining doubt, in *Pullman-Standard v. Swint*, 456 U.S. 273 (1982); *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985); and *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015). In *Teva*, the Supreme Court noted that Rule 52(a)(6) "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous." *Id*. at 837 (quoting *Pullman-Standard*, 456 U.S. at 287). "Rule 52(a) applies to findings of fact, including those described as 'ultimate facts'

because they may determine the outcome of litigation." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984). The district court's finding that it was highly probable that Petitioner was Mondaca Vega is an "ultimate fact," which determines the outcome of this litigation. This determination is purely fact based, and made after considering the evidence of Petitioner's identity submitted to the district court. Thus, because the majority did not find an error of law here, we must give deference to the district court's determination that Petitioner is Mondaca Vega unless such determination is clearly erroneous.

---

MURGUIA, Circuit Judge, joined in full by NGUYEN, Circuit Judge, and as to Parts A, B, and D by THOMAS, Chief Judge, and PREGERSON and W. FLETCHER, Circuit Judges, concurring in part and dissenting in part:

This case involves "the vexing nature of the distinction between questions of fact and questions of law." *See Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982). On some questions, the answer is easy. How many times was Petitioner deported? Under what name? Did Petitioner successfully apply for a social security number? Has he ever been convicted of a crime as a U.S. citizen? How many children does he have, and what is the status of their citizenship? Is the Petitioner's testimony persuasive? These are undoubtedly questions of fact, and we review the district court's answers to these questions for clear error. *See* Fed. R. Civ. P. 52(a)(6).

On others, the fact-or-law distinction is more difficult. Did the Government prove by "clear, unequivocal, and

convincing" evidence that Petitioner's evidence of U.S. citizenship was illegally procured or obtained by fraud?[1] *Lee Hon Lung v. Dulles*, 261 F.2d 719, 724 (9th Cir. 1958). The Government contends, and the majority concludes, that this is a question of fact, subject to deference under clear error review. I believe that the district court's answer to this question is not a "pure finding[] of fact," but a finding that "'clearly impl[ies] the application of standards of law.'" *See Pullman-Standard*, 456 U.S. at 286 n.16 (quoting *Baumgartner v. United States*, 322 U.S. 665, 671 (1944)). Therefore, I would review that question de novo. *See id.* I consequently would reverse the district court and grant the petition for review.

## A.

The Supreme Court first prescribed a de novo standard for reviewing the Government's burden of proof in citizenship cases in *Baumgartner v. United States*. 322 U.S. 665. There, the Supreme Court considered whether the Government had proven by clear, unequivocal, and convincing evidence that Carl Baumgartner, a naturalized U.S. citizen, had obtained his citizenship through fraud. *See id.* at 671–72. The answer to this question, according to the Court, "more clearly impli[ed] the application of standards of law" than pure findings of fact. *See id.* at 671. De novo review was necessary because otherwise the "emphasis" on the Government's high burden of proof in citizenship cases "would be lost" if the district court's ultimate conclusion on that question was "deemed a 'fact' of the same order as all other 'facts,' not open to

---

[1] I agree with the majority that the district court did not err in requiring the Government to satisfy the intermediate burden of proof and therefore concur in Sections I–IV of the majority opinion. *See* Maj. Op. at 12–17.

review." *See id.* at 671 (internal citation omitted). Notably, the Court distinguished the ultimate burden of proof question, which required a "conclusion . . . drawn from the whole mass of evidence," from "subsidiary" findings of fact, such as who said what, when, and where. *See id.* at 670–71.

As in *Baumgartner*, when "Congress has not spoken and [when] the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *See Miller v. Fenton*, 474 U.S. 104, 113–14 (1985). Considering the gravity of the interest at stake—U.S. citizenship and all its attendant rights—and the correspondingly high burden of proof, the Supreme Court deliberately chose to designate the question of the Government's burden of proof as a question of law subject to independent, or de novo, review.[2] *See Baumgartner*, 322 U.S. at 670–71.

When deciding issues of citizenship in denaturalization cases, the Supreme Court has not strayed from its reasoning in *Baumgartner*. *See, e.g.*, *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) ("[I]n reviewing denaturalization cases, we have carefully examined the record ourselves."); *Costello v. United States*, 365 U.S. 265, 269–70 (1961) ("The

---

[2] As used in *Baumgartner*, the phrase "independent assessment" is the functional equivalent of de novo review. By using this term, I do not suggest that *Baumgartner* allows "de novo" review of the entire record or the district court's underlying factual determinations. It does not. Even where the Supreme Court has prescribed "independent review," we still must afford proper deference to any *factual* finding to which Rule 52(a)(6) applies. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499–500 (1984).

issue in these cases is so important to the liberty of the citizen that the weight normally given concurrent findings of two lower courts does not preclude reconsideration here."); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (same); *Nowak v. United States*, 356 U.S. 660, 663 (1958) (scrutinizing the record in a denaturalization case "with the utmost care"); *Knauer v. United States*, 328 U.S. 654, 657–58 (1946) ("We reexamine the facts to determine whether the United States has carried its burden of proving by 'clear, unequivocal, and convincing' evidence, which does not leave 'the issue in doubt,' that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally.").

## B.

As the majority recognizes, we have previously applied *Baumgartner*'s independent standard of review in an alienage determination case. *See Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir. 1970). In *Lim*, the plaintiff asked for a judgment declaring him to be a citizen of the United States after the Immigration and Naturalization Service began to question his identity. *Id.* at 198–99. At the time of the lawsuit, Lim had been considered a derivative citizen for almost thirty-six years. *See id.* The Government argued that Lim was not entitled to citizenship because he was actually related to Jew Look, a Chinese citizen, not Lim Sam, a U.S. citizen. *See id.* at 199. The district court agreed, holding that the Government had shown that Lim was not a U.S. citizen. *Id.* at 200. Independently reviewing this question, we reversed, holding that in light of the Service's prior determination of citizenship and Lim's reliance on it, the Government had failed to show "clear, unequivocal, and convincing evidence" that Lim was not a U.S. citizen. *See id.* at 204.

As in *Lim*, the Government here has treated Petitioner as a citizen.  He has been issued more than one U.S. Passport. He has been convicted and sentenced to prison as a U.S. citizen.  And six of his children have been awarded derivative citizenship or lawful permanent resident status based on Petitioner's own citizenship.  Although none of these actions have the conclusiveness of a formal naturalization, Petitioner has relied on these actions, made his home here, and established the ties and roots of permanent citizenship.  In cases such as this—where the Government has treated an individual like a citizen for years—we have held that:

> [T]he practical effect of a decision favorable to the Government in this case is the same as that which results from a decision favorable to the Government in a denaturalization case.  In either case, the individual is stripped of what [the Supreme Court] termed "the priceless benefits" which derive from the status of citizenship.  In either case, the Government "seeks to turn the clock back," with possible grievous consequences.

*Lee Hon Lung*, 261 F.2d at 724 (internal citation omitted) (quoting *Schneiderman v. United States*, 320 U.S. 118, 122 (1943)); *cf. Sanchez-Martinez v. INS*, 714 F.2d 72, 74 (9th Cir. 1983) (distinguishing *Lim* and applying a clear error standard of review because "there ha[d] been no prior determination of citizenship" and petitioner's "claim to United States citizenship [was] based solely on his own belief and the recollections of others as to his putative birth"). Because the Government repeatedly treated Petitioner as a citizen over the course of forty years, I would follow the clear

direction of *Lim* and apply *Baumgartner*'s two-step standard of review to this case.

## C.

The majority agrees that *Lim* squarely addresses this case. *See* Maj. Op. at 22 ("If *Lim* is good law, it indeed controls the outcome here."). In order to get around *Lim*, which has been the law of our Circuit for forty-five years, the majority overrules it.[3]

The majority concludes that *Baumgartner* simply does not apply because *Lim*, and this case, involved an alienage

---

[3] The other dissent also would overrule *Lim*, but on different grounds. *See* Judge N.R. Smith's Dissent at 45. According to the other dissent, Congress prescribed the appropriate scope and standard of judicial review in 8 U.S.C. § 1252(b). As discussed above, I agree that Rule 52(a)(6) requires us to review the district court's findings of fact for clear error. *See supra* note 2. The question here is not whether Rule 52(a)(6) applies, but whether the district court's ultimate determination as to the Government's burden of proof is a finding of fact or a conclusion of law. On that question, Congress has remained silent and has not, as the dissent suggests, concluded that the district court was "better positioned than another to decide the issue in question." Judge N.R. Smith's Dissent at 44–45 (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)). *Miller*, on which the dissent relies, was a habeas case that did not involve citizenship claims. Moreover, the Court in *Miller* reaffirmed that "the ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review." 474 U.S. at 115. Similarly, both the Supreme Court and this Court have definitively held that the issue here "more clearly impli[es] the application of standards of law" and therefore should be reviewed de novo. *See Baumgartner*, 322 U.S. at 671; *Lim*, 431 F.2d at 199–200; *see also Pullman-Standard*, 456 U.S. at 286 n.16.

determination, not a denaturalization proceeding.**[4]**  But the majority uses too blunt a knife.  Although the Supreme Court has generally stated the importance of citizenship in denaturalization and expatriation cases, it has never suggested that the wrongful deportation of a United States citizen is a lesser loss of liberty than the stripping of one's citizenship. *See Baumgartner*, 322 U.S. at 680 (Murphy, J., concurring) ("The naturalized citizen has as much right as the natural born citizen to exercise the cherished freedoms of speech, press and religion . . . ."); *Woodby v. INS*, 385 U.S. 276, 286 (1966) ("The immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores."); *see also Lee Hon Lung*, 261 F.2d at 724 (noting that the practical effect of a judgment declaring someone to be a non-citizen is the same as a denaturalization order).  As plainly illustrated in this case, the important interests of citizenship present in denaturalization proceedings can also permeate alienage determinations made in the context of deportation proceedings.   In seeking to remove Petitioner, the Government's sole argument is that Petitioner is not actually who he said he was—i.e., that Petitioner's citizenship was obtained through fraud.  This is the same allegation that the Government made against the petitioners in the denaturalization cases. *Cf. Baumgartner*, 322 U.S. at 671–72 ("The gravamen of the Government's complaint and of the

---

**[4]** As further justification for erecting a rigid barrier between denaturalization and alienage determinations made in the context of deportation proceedings, the majority suggests that *Baumgartner* only applies when a case implicates free-speech or political persecution. *See* Maj. Op. at 20–21.  These concerns, according to the majority, are "uniquely present in the denaturalization context." *See* Maj. Op. at 19.  But the risk of political persecution does not arise only in the denaturalization context; it is also present in deportation proceedings.

findings and opinion below is . . . in short, that Baumgartner was guilty of fraud.").

The majority's hard-line distinction between denaturalization and deportation proceedings further ignores the fact that the Supreme Court and this court have consistently applied the same intermediate burden of proof to both types of proceedings.[5] *See Chaunt*, 364 U.S. at 353; *Woodby*, 385 U.S. at 286. We have also applied the same burden of proof to cases where citizenship is at issue. *See also Lim*, 431 F.2d at 199; *Lee Hon Lung*, 261 F.2d at 723. And that is the same burden of proof that the majority applies today. Maj. Op. at 11–12. The burden of proof issue cannot be separated from the appellate standard of review in this case. It was only because of this "exacting standard of proof" that the *Baumgartner* Court applied de novo review to the district court's ultimate determination. *See Baumgartner*, 322 U.S. at 671 (indicating that the trial court burden of proof "would be lost" without heightened appellate review). Together, the burden of proof and standard of review work to safeguard the "most valuable right[]" of citizenship. *See Gorbach v. Reno*, 219 F.3d 1087, 1098 (9th Cir. 2000) (en banc). For these reasons, I would hold that *Lim* is sound and should be followed.

---

[5] The majority notes that in deportation proceedings we typically review agency fact finding with deference. Maj. Op. at 24. However, we do not provide deference to agency fact finding in nationality claims, such as this one, where there are genuine issues of fact. *See* 8 U.S.C. § 1252 (b)(4) (specifically exempting 8 U.S.C. § 1252(b)(5)(B) from the deferential scope of review); *id.* § 1252(b)(5)(B) (directing the court of appeals to "transfer the proceeding to the district court . . . for a new hearing on the nationality claim" if "the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented").

D.

The majority also suggests that the *Baumgartner* standard of review, as adopted by this court in *Lim*, has been impliedly overruled by the Supreme Court in *Pullman-Standard v. Swint*, 456 U.S. 273 (1982), and *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985). Maj. Op. at 22–23. The majority concludes that *Lim* is no longer good law because "the Supreme Court has questioned whether there can ever be independent appellate review of a question of fact." Maj. Op. at 22. According to the majority, the court "need only conclude that *Lim* has been overruled, leaving the Supreme Court to decide whether it has also implicitly repudiated its own decisions." Maj. Op. at 23 n.9. But that is a distinction without a difference. *Lim* merely adopted *Baumgartner* and its progeny's appellate standard of review. *See Lim*, 431 F.2d at 199–200. Therefore, the two cases rise and fall together. Until the Supreme Court holds otherwise, *Baumgartner* and its progeny remain good law.

In contrast to *Baumgartner*, both *Pullman-Standard* and *Anderson* concerned a question of fact—the finding of intentional discrimination in discrimination cases. *See Anderson*, 470 U.S. at 573–76; *Pullman-Standard*, 456 U.S. at 286–90. Indeed, the fact/law distinction was abundantly clear in *Pullman-Standard* and *Anderson* because Congress had designated the question of intentional discrimination as "a pure question of fact." *See Pullman-Standard*, 456 U.S. at 286 n.16.

Significantly, the Court in *Pullman-Standard* expressly distinguished *Baumgartner* as not involving a question of fact. *Id.* Affirming that *Baumgartner* applied independent review to "the conclusion . . . that the exacting standard of

proof had been satisfied" in citizenship determinations, the *Pullman-Standard* Court explained that the *Baumgartner* Court's designation of this question as an "ultimate fact" "referred not to pure findings of fact—as [it found] discriminatory intent to be in this context—but to findings that 'clearly impl[y] the application of standards of law.'" *Id.* (second alteration in original) (quoting *Baumgartner*, 322 U.S. at 671). As the *Pullman-Standard* Court recognized, Rule 52(a)'s mandate for clear error review simply "does not apply to conclusions of law." *Id*. at 287; *see also id.* at 289 n.19 (declining to address "the much-mooted issue of the applicability of the Rule 52(a) standard to mixed questions of law and fact").

The Supreme Court's recent decision in *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015), did not change this distinction. *Teva*, like *Pullman-Standard* and *Anderson*, did not address the Government's burden of proof in citizenship cases. Rather, *Teva* addressed the appropriate standard of review to be applied to "subsidiary factual matters" made in the course of patent claim construction. *Id.* at 836. The Court concluded that these "subsidiary factual matters" were questions of pure fact subject to clear error review under Rule 52(a). *Id*. at 836–37. Notably, the Court did not disturb its previous conclusion that *Baumgartner* dealt with an issue of law, not fact. *See Pullman-Standard*, 456 U.S. at 286 n.16. The Court also did not change its decades-old guidance on how to make the fact/law distinction. *See id.*

In light of the Supreme Court's clear distinction of *Baumgartner* and its repeated refusals to overrule that precedent, I would hold that *Baumgartner*'s independent standard of review, as applied to alienage determinations in

*Lim*, remains binding on this Circuit. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents."); *see also United States v. Zajanckauskas*, 441 F.3d 32, 37–38 & n.5 (1st Cir. 2006) (holding that *Baumgartner* is "still valid" and has "not been overruled in any way").

### E.

Independently reviewing the district court's ultimate determination that the Government met its burden of proof and reviewing the district court's underlying findings of fact for clear error, *Baumgartner*, 322 U.S. at 670–71, I would reverse the district court and grant the petition.

All agree that the district court correctly determined that Petitioner carried his initial burden of proving by a preponderance of evidence that he is an American citizen by the name of Reynaldo Mondaca-Carlon. Maj. Op. at 12. The Government thus was required to present clear, unequivocal, and convincing evidence that Petitioner was not who he claimed to be. Maj. Op. at 11–12. The Government did not meet its high burden.

First, several of the district court's underlying findings of fact were clearly erroneous. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1018 (9th Cir. 2012) (when reviewing for clear error a district court's factual findings "may be reversed only if 'illogical, implausible, or without support in inferences that may be drawn from the facts in the record'" (quoting *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 660 F.3d 384, 395 (9th Cir. 2011))).

As the Government admits, and the majority agrees, there is no evidence in the record to support the district court's findings that Petitioner was deported in July 1951, September 1951, or November 1952.  Maj. Op. at 27.

There is also no evidence in the record supporting the district court's conclusion that Petitioner would have had to show a birth certificate in order to obtain a social security card.  Maj. Op. at 27; *see also United States v. Berber-Tinoco*, 510 F.3d 1083, 1091 (9th Cir. 2007) ("A trial judge is prohibited from relying on his personal experience to support the taking of judicial notice." (internal quotation marks omitted) (citation omitted)).  This error is not inconsequential.  The district court solely relied on this erroneous conclusion to discount Petitioner's testimony that he obtained his authentic U.S. birth certificate from his mother after he was deported the first time.  Thus, the district court had no basis to conclude that Petitioner did not rightly possess an authentic U.S. birth certificate.

The district court relied on several other clearly erroneous findings in discounting Petitioner's testimony.  For example, the district court found it implausible that Petitioner would not have identified himself as a U.S. citizen each time he was deported in part because deportation was against his financial interest.  But there is no evidence in the record to support the district court's findings regarding employment opportunities for a farm worker in the 1950s, much less Petitioner's own personal financial motives.  Similarly, the district court improperly speculated that Petitioner only began using the name Reynaldo Mondaca after he was married in order to obtain the benefits of a U.S. citizen.  This finding is flatly contradicted by the record, which shows that Petitioner

obtained a Social Security number under Reynaldo's name in 1953, almost twenty years before his marriage.

Without these clearly erroneous findings, but considering all the other facts as found by the district court, I would conclude that the Government has not proven by clear, unequivocal, and convincing evidence that Petitioner is Salvador Mondaca-Vega, citizen of Mexico.

For each finding of fact offered by the Government, there is an equal or more significant finding of fact favoring the Petitioner. For example, it is undisputed that Petitioner has accepted voluntary departure and has been deported under the name Salvador Mondaca-Vega. But it is also undisputed that the Government has repeatedly treated Petitioner as Reynaldo Mondaca-Carlon, a U.S. citizen. In 1953, Petitioner obtained a Social Security number, which he continues to use today. In fact, according to the Social Security Administration, Petitioner is currently qualified for Social Security benefits. Similarly, the U.S. Department of State issued Petitioner a valid passport at least two times, once in 1998 and again in 2005. The United States also granted Petitioner's children derivative citizenship based on his status. inally, and perhaps most damaging to the Government's position, the Government charged Petitioner in federal court as a U.S. citizen. There is no evidence in the record that the Government ever questioned Petitioner's citizenship in conjunction with that proceeding.

The Government also points to Petitioner's signed statement sworn under the name Salvador Mondaca-Vega. But Petitioner signed many other documents under the name

Reynaldo Mondaca-Carlon.**[6]** For example, in his 1953 application for a Social Security card, Petitioner indicated that his parents were Marin Mondaca and Antonia Carlon and that he was born in Imperial, California. Petitioner also listed his name as Reynaldo on all family documents, including documents that have no relation to his citizenship status. He is likewise listed as Reynaldo on all of his children's baptismal certificates filed with his parish in Mexico.

The fingerprint evidence is similarly inconclusive. Although Petitioner's fingerprints match those taken by the INS for Salvador Mondaca-Vega, Petitioner's fingerprints also match an FBI Identification Record that identifies Petitioner as a U.S. citizen, born in California.

In light of the conflicting "whole mass of evidence," *see Baumgartner*, 322 U.S. at 671, I find it impossible to conclude that the Government has met its burden by clear, unequivocal, and convincing evidence. *See Lim*, 431 F.2d at 203. I would reverse the district court and grant the petition. Therefore, I respectfully dissent.

---

**[6]** Petitioner acknowledged that he used various aliases, but testified that Reynaldo Mondaca-Carlon is his true name and identity. The district court gave little weight to this testimony, finding that the testimony was inconsistent and implausible. As discussed above, much of the district court's adverse credibility determination was based on clearly erroneous findings of fact and improper speculation. That said, the district court provided other reasons for discounting Petitioner's testimony that were not clearly erroneous. For example, the district court noted discrepancies between the Petitioner's testimony and his deposition and other documentary evidence. *See* Maj. Op. at 27. Given this credibility determination, I likewise accord little weight to Petitioner's testimony.